IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SCOTT ALAN SORENSON,<br><br>Defendant. | Case No. CR11-2009<br><br>REPORT AND RECOMMENDATION |

On the 1st day of April 2011, this matter came on for hearing on the Motion to Suppress (docket number 10) filed by the Defendant on March 22, 2011. The Government was represented by Assistant United States Attorney Rebecca Goodgame Ebinger. Defendant Scott Alan Sorenson appeared in person and was represented by his attorney, John Dennis Jacobsen.

## I. PROCEDURAL HISTORY

On February 16, 2011, Defendant Scott Alan Sorenson was charged by Indictment with failing to register as a sex offender. At the arraignment held on February 22, 2011, Defendant entered a plea of not guilty. Trial was initially scheduled for April 18, 2011, but later rescheduled for May 31, 2011, at Defendant's request.

On March 22, 2011, Defendant timely filed the instant motion to suppress. The Government filed its resistance on March 28, 2011.

## II. ISSUE PRESENTED

Following his arrest, and after receiving a *Miranda* warning, Defendant made various admissions while being interviewed at the Fillmore County, Minnesota, Sheriff's Office. Defendant asserts that the waiver of his *Miranda* rights was not made knowingly and voluntarily.

## III. RELEVANT FACTS

On January 31, 2011, a criminal complaint was filed in the United States District Court for the Northern District of Iowa, charging Defendant with failure to register as a sex offender.[1] On the same date, a warrant was issued for his arrest.

On February 8, 2011 at approximately 11:00 a.m., law enforcement officers executed a search warrant on a rural residence near Lanesboro, Minnesota. Defendant and two other persons were found at the residence. Defendant was arrested on the federal warrant. After Defendant was placed in a squad car for transport, Fillmore County Deputy Sheriff David Dyke asked Defendant "if he would be willing to speak with me when he got to the jail and he stated he would be." Defendant was then transported to the Fillmore County Sheriff's Office.

At approximately 1:00 p.m., after "booking" at the sheriff's office, Defendant was questioned by Deputy Dyke in an interview room. According to Dyke, the room is "not a real large room," with a one-way mirror, a round table, three or four chairs, and a couch. Also present in the room during the interrogation were two deputies from the Allamakee County, Iowa, Sheriff's Office. Defendant, Dyke, and one of the other deputies sat at the table, while the third deputy sat on the couch.

At the beginning of the interview, Deputy Dyke advised Defendant of his *Miranda* rights and asked if he agreed to speak with Dyke.[2] Defendant said he understood his rights and agreed to speak with the officers "for now." During the course of the interview, however, Defendant never revoked his consent to speak with the officers.

When asked by Deputy Dyke when he had last used methamphetamine, Defendant said "this morning." Defendant told Dyke that he had last "injected" methamphetamine

---

[1] *See United States of America v. Scott Alan Sorenson*, No. 1:11-mj-00022-JSS (N.D. Ia.).

[2] The interview was video recorded and audio recorded. Both the video recording and the audio recording were introduced as exhibits. The audio recording was accomplished by a device sitting on the table, and is of higher quality.

2

"a couple of days ago." However, Defendant did not exhibit any symptoms which Dyke associated with drug usage, such as being "fidgety," not able to focus, or easily distracted. Defendant's answers were coherent and responsive to the officers' questions. According to Dyke, he had no concerns that Defendant was unable to understand his rights or voluntarily waive those rights.

Defendant does not claim that the officers threatened him at any time, or even raised their voices. At one point, Defendant asked for a diet soda, which was provided. Deputy Dyke testified that he was wearing a weapon, but it was hidden on his belt underneath his shirt. Likewise, Dyke did not believe that the other deputies' weapons were visible.

## IV. DISCUSSION

It is undisputed that Defendant was in custody when he was interrogated by officers at the Fillmore County Sheriff's Office. Accordingly, Deputy Dyke was required to advise Defendant of his *Miranda* rights. *United States v. Elzahabi*, 557 F.3d 879, 883 (8th Cir. 2009) ("Law enforcement officials must administer *Miranda* warnings before interrogating individuals in their custody."). It is undisputed that Defendant was advised of his *Miranda* rights, stated that he understood those rights, and then agreed to speak with the officers. The fighting issue in this case is whether Defendant knowingly and intelligently waived his rights, and whether his subsequent statement was voluntary.[3]

"A waiver is 'knowing and intelligent' where it is made with full awareness of both the nature of the right being abandoned and the consequences of abandoning the right, and a waiver is 'voluntary' where the court can determine that the waiver was a product of the suspect's free and deliberate choice, and not the product of intimidation, coercion, or deception." *Thai v. Mapes*, 412 F.3d 970, 977 (8th Cir. 2005). Here, Defendant argues that "it is clear" that his waiver was not knowing or voluntary "[b]y the sheer volume of

---

[3] Defendant did not submit a supporting brief, as required by Local Criminal Rule 47.a and Local Rule 7.d.

3

drugs ingested by the defendant and the surrounding circumstances of his location and limitation of movement."[4]

In *United States v. Griffith*, 533 F.3d 979 (8th Cir. 2008), the Court described certain "suspects' characteristics" and "environmental" factors which may be considered in determining whether a suspect's post-arrest statement was given voluntarily. In determining whether his statement is voluntary, the Court may consider the following characteristics relating to the suspect:

> (1) their age; (2) their general intelligence and education; (3) whether they were intoxicated or under the influence of drugs when consenting; (4) whether they consented after being informed of their right to withhold consent or of their Miranda rights; and (5) whether, because they had been previously arrested, they were aware of the protections afforded to suspected criminals by the legal system.

*Id.* at 984 (citing *United States v. Chaidez*, 906 F.2d 377, 381 (8th Cir. 1990).

Here, the record is silent regarding Defendant's age, general intelligence, and education. There is no evidence, however, that he is of below-average intelligence. As noted above, Defendant's agreement to speak with Deputy Dyke came after being advised of his right to remain silent. Since Defendant was indicted on the charge of failing to register as a sex offender, the Court assumes that he has some prior involvement in the legal system, but the record is silent regarding the number of times Defendant may have been previously arrested and advised of his right to remain silent. The only "personal characteristic" upon which Defendant apparently relies, is the claim in his motion to suppress that his "will, clarity, and mental functioning" was "clouded" by his use of drugs.

While drug usage is relevant to the Court's analysis regarding whether a defendant's statement is involuntary, "the test is whether these mental impairments caused the defendant's will to be overborne." *United States v. Gaddy*, 532 F.3d 783, 788 (8th Cir.

---

[4] *See* Motion to Suppress (docket number 10), ¶ 8 at 2.

4

2008) (quoting *United States v. Casal*, 915 F.2d 1225, 1229 (8th Cir. 1990)). In *Casal*, the Court concluded that a suspect who recently used methamphetamine and had not slept for five days voluntarily waived his *Miranda* rights, where the police officers testified that they had no knowledge of these alleged impairments and the suspect did not act intoxicated. 915 F.2d at 1229. Similarly, in *United States v. Contreras*, 372 F.3d 974, 977 (8th Cir. 2004), the Court concluded that the defendant voluntarily consented to a search of his home, although he had used methamphetamine the evening before and marijuana the day he gave consent. The officers testified that the defendant "appeared to be sober and in control of his faculties at the time he consented." *Id.*

Here, Defendant's argument fails for a simple reason. There is no evidence to support his contention. Defendant's interrogation at the Fillmore County Sheriff's Office was video recorded. Defendant does not exhibit any signs of being under the influence of a controlled substance. Defendant has no difficulty communicating with the officers. His answers are coherent and responsive to the questions.

Defendant also argues that the "surrounding circumstances of his location and limitation of movement" suggest that his waiver was not knowing or voluntary. In addition to the personal characteristics associated with the suspect, the Court may also consider certain "environmental" factors:

> whether the person who consented (1) was detained and questioned for a long or short time; (2) was threatened, physically intimidated, or punished by the police; (3) relied upon promises or misrepresentations made by the police; (4) was in custody or under arrest when the consent was given; (5) was in a public or a secluded place; or (6) either objected to the search or stood by silently while the search occurred.

*Griffith*, 533 F.3d at 979 (citing *Chaidez*, 906 F.2d at 381).

Here, Defendant had been arrested and was being interrogated in a relatively small room with three officers present. The questioning continued for several hours. There is no evidence, however, that Defendant "was threatened, physically intimidated, or punished

5

by the police." There is no indication that he was denied bathroom privileges. Defendant was provided with a diet soda, at his request. At no time did Defendant ever express any desire that questioning cease.

The factors set forth in *Chaidez* are not to be applied "mechanically," but rather serve as a "guide" to the Court's analysis. *Id.* "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004).[5] "Whether a confession is involuntary is judged by the totality of the circumstances." *Id.* The Government must prove by a preponderance of the evidence that the challenged statements were voluntary. *Id.* After considering all of the facts and circumstances, the Court concludes that the Government has met its burden of proving that Defendant's statements were given voluntarily. There is no evidence that Defendant's free will was overborne, that his statements were extracted by threats or promises, or that Defendant lacked the capacity to waive his *Miranda* rights. Accordingly, I believe that Defendant's motion to suppress should be denied.

## V. RECOMMENDATION

For the reasons set forth above, I respectfully **RECOMMEND** that the Motion to Suppress (docket number 10) filed by the Defendant be **DENIED**.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report*

---

[5] The only case cited by Defendant in his motion – *United States v. Kilgore*, 58 F.3d 350 (8th Cir. 1995) – is in accord with *LeBrun* and offers no support to Defendant's claims here.

6

and Recommendation, they must promptly order a transcript of the hearing held on April 1, 2011.

DATED this 5th day of April, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA